ANTHONY LAPORTA, RESPONDENT, v. CLEMENT DE R.
LEONARD, APPELLANT.

Argued December 2, 1915—Decided March 6, 1916.

The parties were members of the bar. Words clearly slanderous were
addressed to the plaintiff by the defendant in a pending proceed-
ing in a police court. The defendant justifies upon the ground
that they were uttered by him as counsel in a cause then and
there pending, and as such were privileged. *Held*, that the rule
of privilege invoked and enunciated in the case of *Munster* v.
*Lamb*, 11 *Q. B. D.* 588, commonly designated as the English
rule, has been quite generally repudiated in this country, and is
not the law of this state. *Held, further*, that the privilege in-
voked does not extend to the limit of protecting counsel in giving
utterance to slanderous expressions against counsel, parties or
witnesses, which expressions have no relation to or bearing upon
the issue or subject-matter before the court. *Held, further*, that
where it appeared upon the trial that the plaintiff had previously
at the same hearing given utterance to slanderous remarks con-
cerning the defendant, it was proper to have such remarks con-
sidered by the jury upon the question of the existence of malice
or provocation in mitigation of damages, and that the refusal of
the trial court to so charge was error.

On appeal from the Hudson Circuit Court.

For the plaintiff, *J. Merritt Lane.*

For the defendant, *Harlan Besson.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff alleges that during a proceed-
ing in the recorder's court of the city of Hoboken, the defend-
ant, a lawyer of many years' standing, remonstrated with him,
a co-laborer at the bar, in the following manner:

"You are a vermin. You are a disgrace to the bar, and are
starting out in the wrong way as a young lawyer. This will
give you a black eye. You and your client committed per-
jury. You suborned your client."

This language resulted in a suit at law for slander, in which the plaintiff alleged serious injury to his reputation and standing in the community, and demanded substantial damages by way of reparation.

To this demand plaintiff replied that he did not utter the language; and that if he did, he was protected in so doing by the legal privilege peculiar to counsel, which, as he conceived, hedges him about in absolute security, so long as his utterances are honestly conceived, to conduce to the advantage of his client.

The testimony at the trial resulted in an issue of fact which the court properly left to the jury, with the result that a verdict for $300 was rendered against the defendant. A number of trial errors are alleged as grounds for reversal, none of which calls for extended consideration, excepting this fundamental contention of the defendant that his utterances in court as counsel for a client are absolutely privileged, and also the refusal of the trial court to instruct the jury that previous charges and accusations uttered by the plaintiff against the defendant might be considered by the jury in mitigation of damages.

The initial objection is fundamental in this department of the law, and serves to call forth a pronouncement from this court, indicating the line of demarcation beyond which the utterances of counsel are not protected by the claim of privilege.

The claim of privilege obtains recognition as an exception to a general rule of liability for tort-feasance, only from the highest considerations of necessity and public policy. 1 *Street Leg. Liab.* 307.

In 1883, the English Court of Queen's Bench, speaking by Brett, master of the rolls, in *Munster* v. *Lamb,* 11 *Q. B. D.* 588, laid down the rule that the privilege of an advocate with respect to defamatory words uttered by him as advocate, in the course of a judicial inquiry, with reference to the subject-matter of the inquiry, is absolute and unqualified, and that no action can be maintained against him for such words, even

though they were irrelevant and spoken maliciously and without reasonable cause.

In a copious note to this case the editor in *7 E. R. C.* 727, presents a critical *résumé* of the English and American cases dealing with the subject; and the modification of this rule, as enunciated by the decisions of the American courts, where the question has been presented for consideration, is there emphasized by a series of well-considered adjudications.

As a result of this examination it is therein laid down that the general American doctrine upon this subject is that counsel is not liable to a civil action, nor to criminal proceedings for anything he may have said in the course of a trial or investigation, although malicious and intended to defame, provided it was relevant and pertinent to the subject-matter of the controversy, but otherwise if malicious and not pertinent and relevant to the inquiry. *Rice* v. *Coolidge,* 121 *Mass.* 393; *White* v. *Carroll,* 42 *N. Y.* 161; *Smith* v. *Howard,* 28 *Iowa* 51; *Burns* v. *McCrate,* 32 *Me.* 442; *McMillan* v. *Birch,* 1 *Binn.* (*Pa.*) 178; *Mower* v. *Watson,* 11 *Vt.* 536.

Perhaps the most cogent expression of the American as distinguished from the English rule is to be found in *Maulsby* v. *Reifsnider,* 69 *Md.* 143; 14 *Atl. Rep.* 505. There the court observed: "We cannot accept the absolute and unqualified privilege laid down in Munster *v.* Lamb. We cannot agree with Brett, M. R., that in a suit against counsel for slander, the only inquiry is whether the words were spoken in a judicial proceeding, and if so, the case must be stopped. If the counsel in the trial of a cause maliciously slanders a party or witness, or any other person, in regard to a matter that has no reference or relation or connection with the case before the court, he is and ought to be answerable in an action by the party injured.

"This qualification of his privilege in no manner impairs the freedom of discussion so necessary to the proper administration of law, nor does it subject counsel to actions for slander, except in cases in which upon reason and sound public policy he ought to be held answerable."

A modern American writer of distinction affirms in harmony with this doctrine that "it is here generally held that the privilege of lawyers, witnesses and parties, is conditional upon the pertinence of the matter to the question on hand and its materiality." 1 *Street Leg. Liab.* 308, and cases cited. See, also, 25 *Cyc.* 377, and cases cited.

Applying this rule, which we conclude to be the more rational solution of the inquiry, to the language attributed to the defendant, it becomes manifest that conceding its truthfulness, it was intended to be entirely personal to the plaintiff, as a lawyer, and was intended to reflect upon him and his professional conduct in a case in which both the plaintiff and defendant were engaged as opposing attorneys. It, consequently, could have no bearing upon the question at issue, and quite clearly was irrelevant to the proper conduct of the case then before the court. The trial court left the question of the pertinency and relevancy of the language to the jury to determine, and in this we find no error under the rule to which we have adverted. The refusal of the trial court, however, to charge the defendant's fifth request presents a legal barrier to the affirmance of this judgment. To apprehend its relevancy we must recur to the facts presented by the record. The recorder's court seemed to be redolent with a militant atmosphere far from conducive to sedate procedure under the highest ethical standards.

Thus, the testimony of the defendant shows that the plaintiff at the same hearing expressed himself of and concerning the defendant and his legal *modus operandi* as follows:

"Mr. Leonard and Mr. S., being shrewd lawyers, so manipulated and coaxed their client that he committed perjury and obtained his judgment by fraud."

Therefore, the defendant upon this trial insisted that while the remarks, which are the basis of this action, may not be entitled to receive recognition in any logical compendium of the retort courteous, they may without question be properly classified under the classic appellation of a *Tu quoque.* And if to this it be answered that in a court of law his legal *status*

thus acquired is no answer to the plaintiff's claim for damages, his insistence is, nevertheless, that the jury should have had the opportunity to consider the offence in question, in conjunction with the serious accusation which provoked it; and that in the light of this provocation the offence charged to him might appear to be but the natural and indignant ebullition of a learned advocate, whose ripe experience in the trials of the forum had reached the didactic stage of the sear and yellow leaf, which entitled him to paternally admonish a neophytic junior, whose practical vision of a legal career is usually circumscribed by the buoyant and unstable perspective of the radiant hues of incipient morn. Concededly, in such a *status, Experentia docet.*

Such an exalted state of mind upon the part of the defendant might be said to exclude any semblance of malice, as an animating motive, and may have supplied *raison detre* upon which a jury might base an argument in mitigation of damages.

The trial court declined to so view the case, and, ignoring that contention, charged that the damages to which the plaintiff might be entitled, if they accepted his view of the case, were sufficiently comprehensive to include damages of a punitive or exemplary character, dependent upon their finding the existence of actual malice.

In consonance with that view the learned trial court declined to charge the request alluded to, which was as follows:

"If you believe the story of the plaintiff, LaPorta, and you find from the testimony that the utterances of the defendant, Leonard, in the Hoboken recorder's court, were provoked by previous charges and accusations made by the plaintiff, La Porta, attacking the defendant, Leonard, then you may consider this in mitigation for damages."

The refusal to charge this request, obviously eliminated from the case all consideration by the jury of the question of provocation, to which we have adverted, and which was properly a subject for their consideration, as a basis for mitigation of damages.

The doctrine which requires the court to submit to the jury the question of provocation, in cases where the complaining party insists upon punitive or exemplary damages, is settled beyond controversy by the great trend of adjudications in this country.

In 8 *R. C. L.* 551, the rule is stated that "provocation may be shown in mitigation of punitive damages, even to the extent of entirely excluding such damages, and limiting recovery to compensatory damages only," citing cases.

A *résumé* of the doctrine and the cases will be found in a note to *Mahoning Valley Railroad Co.* v. *DePascale, 70 Ohio* 179; 1 *Am. & Eng. Ann. Cas.* 896.

To the same effect are 13 *Cyc.* 66, and cases cited, and 25 *Id.* 421, and the cases there collected.

The result is that the refusal of the trial court to charge the request under consideration necessitates the reversal of the judgment below and the issuing of a *venire de novo*.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Terhune, Heppenheimer, Williams, Taylor, JJ.   15.