251 N.J. Super. 113 (1991)
597 A.2d 543
LUCREZIA MINNITTI VIVIANO, PLAINTIFF-RESPONDENT,
v.
CBS, INC., JOSEPH KROLL, NELSON E. HORNER AND JOHN L. NOONAN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1991.
Decided October 1, 1991.
*117 Before Judges PETRELLA, MUIR, and BROCHIN.
Thomas B. Kenworthy, of the Pennsylvania Bar, admitted pro hace vice, argued the cause for appellants (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys; Sandford F. Schmidt and Thomas B. Kenworthy, on the brief).
Angelo J. Falciani argued the cause for respondent (Falciani & Fletcher, attorneys; James D. Donnelly, on the brief).
The opinion of this court was delivered by BROCHIN, J.A.D.
In this case, we hold that a corporate employer and its supervisory employees who fraudulently concealed information relevant to another employee's suit against third parties for work-related injuries are answerable in damages to the injured employee.
Plaintiff Lucrezia Viviano was an employee of defendant CBS, Inc. She operated a machine that worked like a giant waffle iron, pressing out plastic phonograph records. On December 1, 1978, the machine malfunctioned, catching her left hand between its upper and lower plates. Before her hand was released, the heat and pressure had destroyed three and a half of her fingers.
*118 On July 2, 1979, plaintiff filed suit to recover for her injuries, initially naming only fictional parties as defendants. See R. 4:26-4. On September 2, 1980, she filed an amended complaint which deleted all of the fictional defendants and substituted a real party whom she alleged had manufactured the press. On September 10, 1981, after having filed three additional amended complaints, each one adding one or more other companies whom she alleged had sold or manufactured other components responsible for the malfunctioning of the press, plaintiff again amended her complaint to add CBS as a defendant. This fourth amended complaint asserted various personal injury claims against CBS and, in addition, included a count in the nature of a bill of discovery. In that count, plaintiff alleged that CBS had unreasonably impeded her discovery and had failed to furnish her with relevant information despite her proper demand.
On December 21, 1981, the trial court dismissed the counts of plaintiff's amended complaint which charged CBS with liability for her personal injuries. The court held that those counts were barred by the Workers' Compensation Act. See N.J.S.A. 34:15-1; Wilson v. Faull, 27 N.J. 105, 116, 141 A.2d 768 (1958). The count in the nature of a bill of discovery remained pending.
In the meanwhile, CBS had re-hired plaintiff as a night security guard at the plant where she had been injured. During the latter part of May 1982, she entered defendant Nelson E. Horner's office. Horner was director of employee relations at the plant. Her personnel file was lying on his desk. In the file, she discovered a previously undisclosed memorandum which Mr. Ronald Brandt, the general foreman responsible for all shifts in the press room, had written three days after her injury. She removed the memorandum from the file and delivered it to her attorneys. The memorandum described the results of Mr. Brandt's investigation and contained the following paragraph:
We found a problem on the old Taylor Timers, we are in the process of changing. If the microswitch sticks, the press will reset itself and go back in and through a cycle. I questioned the electricians on a safety device. We are *119 in the process of replacing the Taylor timers with our electronic timers that have an additional safety built in.
A few days later, an attorney for CBS handed a copy of the Brandt memorandum to plaintiff's attorney. CBS did not indicate it knew that plaintiff had already discovered the memorandum.
On the basis of the Brandt memorandum, plaintiff prepared a sixth amended complaint. In it, she named Sybron, a corporation, as a defendant. Sybron was the successor by merger to the company that had manufactured the Taylor Timers. On July 16, 1982, the court permitted plaintiff to file this amended complaint and to serve it on Sybron.[1] By an order also dated July 16, 1982, the court dismissed with prejudice the count of plaintiff's fourth amended complaint that asserted a claim against CBS in the nature of a bill of discovery. That dismissal order became effective September 17, 1982. With the dismissal of the discovery count, no further claim for relief remained pending against CBS.
Thereafter, Sybron moved for summary judgment dismissing the sixth amended complaint because it had not been filed within the two-year period of limitations. See N.J.S.A. 2A:14-2. The trial court denied the motion by an order entered November 9, 1983. Sybron took an interlocutory appeal to this court. In an unpublished opinion filed April 12, 1984, we reversed, with one judge dissenting. We held that the discovery rule did not apply and that the fictitious party practice, R. 4:26-4, did not toll the statute of limitations because plaintiff had not retained any fictitious defendants after she had amended her complaint for the first time in July 1980. Plaintiff appealed our decision to the Supreme Court.
On June 4, 1984, shortly after we issued our opinion dismissing plaintiff's amended complaint against Sybron, she commenced the present suit. In this suit she charges that CBS and *120 certain of its supervisory employees delayed, hampered, and interfered with her personal injury action by fraudulently concealing and misrepresenting relevant facts which CBS was obligated to divulge in compliance with plaintiff's discovery demands. Defendants moved to dismiss on grounds which included the entire controversy doctrine. Before that motion was heard, plaintiff, without opposition, obtained an order transferring the case to the inactive list until the Supreme Court decided her appeal.
On January 28, 1986, the Supreme Court reversed this court's decision in plaintiff's personal injury suit against Sybron. See Viviano v. CBS, Inc., 101 N.J. 538, 503 A.2d 296 (1986). The Court agreed that the discovery rule was inapplicable and that R. 4:26-4 had not been utilized correctly. But it relaxed the latter rule and remanded the case for trial because plaintiff's misapplication of the fictitious party practice was attributable primarily "to the frustration of discovery by CBS." Id. at 556, 503 A.2d 296.
In February 1987, after remand and on the eve of trial, plaintiff settled with Sybron for $292,500, and the personal injury suit was dismissed with prejudice.
After the action against Sybron had been settled, in July 1988, the present suit seeking damages from CBS because of its concealment of evidence in the personal injury action was restored to the active list. The action against CBS was tried to a jury. The jury found that CBS and all of the individual defendants had fraudulently concealed material discovery information and had tortiously interfered with the "prospective economic advantages" which plaintiff had sought to gain from her personal injury suit. The jury also found that CBS and defendant Kroll had fraudulently misrepresented material information to plaintiff. They awarded plaintiff $65,600 compensation for the loss of interest on her personal injury settlement; $7,351.71 for expenses; and, against CBS alone, $215,000 in punitive damages.
*121 On appeal, the defendants argue that plaintiff's case is predicated solely on their allegedly false testimony and their asserted failure to provide discovery during the course of a law suit. They contend that the evidence presented at trial was insufficient to support those claims; that, even if proved, the conduct attributed to them does not state a claim for which relief may be granted under New Jersey law; and that any such claims should have been litigated in the personal injury action and are now barred by the entire controversy doctrine. They also assert that there was no legal basis for the jury's awarding punitive damages, that the compensatory damages were unduly speculative, and that they were prejudiced by the court's permitting plaintiff to recover damages for losses which she did not specify during pretrial discovery and by a series of other trial errors. We disagree with defendants' contentions and therefore affirm.
The gravamen of plaintiff's case is defendants' fraudulent concealment of the Brandt memorandum. The accident happened on a Friday. The memorandum was prepared the following Monday. It contained the key information plaintiff needed to recover for her injuries. It told her, "[O]n the old Taylor Timers .... [i]f the micro-switch sticks, the press will reset itself and go back in and through a cycle." In those few words, it explained what had probably caused the accident, it identified the timer as the defective component responsible for the malfunction, and it named the company that had manufactured the timer. Immediately after the accident, CBS removed the timer and discarded it so that it was not available to plaintiff's expert when he was permitted to view the machine. The memorandum was the only evidence plaintiff was able to find that suggested Sybron's culpability. Once the Supreme Court had ruled that the expiration of the period of limitations would not defeat plaintiff's action, her personal injury damage claim against Sybron was promptly settled.
*122 The Brandt memorandum was addressed to defendant John L. Noonan, manager of manufacturing. It listed defendant Joseph Kroll, the plant manager, and defendant Nelson E. Horner, the plant director of employee relations, as carbon copy addressees. Mr. Kroll was served with a subpoena returnable at his deposition. As he interpreted the subpoena, it required him to produce the Brandt memorandum. He claimed that he had not recalled the existence of the memorandum when he received the subpoena, but the jury was entitled to conclude that he was lying. Furthermore, by defendants' deposition testimony and other responses to plaintiff's discovery demands during the course of the personal injury suit, CBS conveyed the impression to plaintiff that it was willing to furnish her with all of the information in its possession relevant to her accident and that all such information was being provided. Since defendants withheld the Brandt memorandum from plaintiff until she herself discovered it on Horner's desk, that impression was false. The jury was entitled to conclude that the impression was intentionally false. As the Supreme Court observed in Viviano v. CBS, Inc., 101 N.J. 538, 556, 503 A.2d 296 (1986), "[b]y suppressing the ... memorandum and removing the timer, CBS led plaintiff and her counsel down a primrose path."
The question of defendants' liability was submitted to the jury on four legal theories, fraudulent concealment, fraudulent misrepresentation, conspiracy, and interference with prospective economic advantage. The jury found in favor of all of the defendants on the conspiracy theory and in favor of two of the individual defendants on the fraudulent misrepresentation theory. They found against all of the defendants on the theories of fraudulent concealment and interference with prospective economic advantage. There was no objection to the form of the verdict sheet that was submitted to the jury. The verdict as returned by the jury implies that each of the legal theories on the basis of which it found in plaintiff's favor resulted in the same amount of damages. Consequently, we will consider the legal sufficiency of only the fraudulent concealment theory. If *123 the trial court's instructions to the jury with respect to that theory are correct, we need not consider whether the other theories are also correct. See Terminal Constr. Corp. v. Bergen Cty. Hackensack River Sanitary Sewer Dist. Auth., 18 N.J. 294, 319, 113 A.2d 787 (1955).
To prove that the defendants were liable to plaintiff for fraudulent concealment, she had to show that they were legally obligated to disclose the Brandt memorandum to her, that it was material to her personal injury case, that she could not readily have learned of it without their disclosing it, that they intentionally failed to disclose it to her, and that she was harmed by relying on the nondisclosure. Cf. State of N.J., Dep't of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150 (1983).
The plaintiff's entire case focused on the defendants' concealment of the Brandt memorandum. Her counsel's closing argument predicated defendants' liability almost exclusively on that concealment.[2] The trial judge charged the jury that the defendants had the duty to provide plaintiff with any documents called for by the deposition subpoena served on defendant Joseph Kroll, the manager of the plant at which she was injured, and to provide her with any additional documents that Mr. Kroll undertook to produce when he was requested to do so during the course of his deposition. Cf. Berman v. Gurwicz, 189 N.J. Super. 89, 93-94, 458 A.2d 1311 (Ch.Div. 1981), aff'd o.b., 189 N.J. Super. 49, 458 A.2d 1289 (App.Div.), certif. denied 94 N.J. 549, 468 A.2d 197 (1983) (a duty of full disclosure may arise from one party's having made a partial disclosure to the other or from the nature of the transaction and the relationship between them). In the context of the trial, this instruction could only have been understood to refer to the Brandt memorandum. Cf. Board of Education of the City of Asbury Park *124 v. Hoek, 38 N.J. 213, 227-228, 183 A.2d 633 (1962) (sufficiency of jury charge is measured by how jurors would understand it in light of all the facts, including theories advanced by the parties). The defendants did not object to that instruction, and we will not consider any objection to it which is raised for the first time before this court. R. 1:7-2.
The trial court properly defined the other elements necessary to establish fraudulent concealment and correctly instructed the jury to determine whether she had sustained her burden of proving them. By its verdict the jury found that plaintiff had established all of the elements of fraudulent concealment, and the record supports its finding. Cf. Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979) (jury verdict will not be overturned unless clearly manifesting a miscarriage of justice); see also, R. 2:10-1.
In Kantor v. Kessler, 132 N.J.L. 336, 40 A.2d 607 (E. & A. 1945), Durand Equipment Co. v. Superior Carbon Products, Inc., 248 N.J. Super. 581, 591 A.2d 987 (App.Div. 1991), and Middlesex Concrete Products and Excavating Corp. v. The Carteret Industrial Ass'n, 68 N.J. Super. 85, 172 A.2d 22 (App.Div. 1961), the plaintiffs alleged that they had suffered the loss of prior law suits because the defendants' testimony had been willfully false. In Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 117 A.2d 889 (1955), Rogers v. Thompson, 89 N.J.L. 639, 99 A. 389 (E. & A. 1916), LaPorta v. Leonard, 88 N.J.L. 663, 97 A. 251 (E. & A. 1916), Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 135 A.2d 346 (App.Div. 1957), and O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 50 A.2d 10 (Sup.Ct. 1946), the plaintiffs alleged that they had been defamed or their businesses had been tortiously interfered with by the defendants' willfully false testimony during prior judicial proceedings. In each of those cases, the essence of the plaintiff's claim was that he had been wronged by the defendant's words. In each case the court held that even maliciously false testimony would not entitle the plaintiffs to redress. An absolute *125 privilege for words spoken in the course of a judicial proceeding was thought necessary to promote testimonial candor by shielding witnesses from fear of subsequent civil suits; criminal penalties were deemed sufficient sanctions against perjury. In cases based on the claim that the defendants' false testimony had caused the loss of prior law suits, the courts also observed that permitting a disappointed suitor to seek damages from a witness who had allegedly committed perjury could prolong litigation indefinitely.[3]
The present case differs from those in which courts recognized an absolute privilege for germane statements made in the course of litigation because in this case false testimony is not the gravamen of plaintiff's claim. The wrong for which she seeks redress is the concealment of evidence  the Brandt memorandum. That the Brandt memorandum existed, that it was material to the plaintiff's personal injury action, and that the defendants did not disclose it are all facts whose proof did not depend on defendants' testimony. The testimony which defendants gave during the discovery proceedings in the personal injury action was material only because it tended to prove that the defendants' concealment of the Brandt memorandum was willful. The witness immunity exemplified by Rainier's Dairies v. Raritan Valley Farms, Inc., supra, 19 N.J. 552, 117 A.2d 889, and Kantor v. Kessler, supra, 132 N.J.L. 336, 40 A.2d 607, does not prohibit such subsequent evidentiary use of words spoken during judicial proceedings.
Plaintiff's cause of action in the present case is analogous to a recently recognized cause of action for destruction of evidence which has been dubbed "spoliation[4] of evidence." *126 That tort had its origin in California and has been recognized in a number of other jurisdictions.[5] The elements of that tort are: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. County of Solano v. Delancy, 215 Cal. App.3d 1232, 264 Cal. Rptr. 721, 729 (Cal. App. 1988), review denied and ordered not to be officially published (Feb. 1, 1990). See Comment, Spoliation of Evidence: A Troubling New Tort, 37 U.Kan.L.Rev. 563 (1989); Solum & Marzen, Truth and Uncertainty: Legal Control of the Destruction of Evidence, 36 Emory L.J., 1085 (1987); see Hazen v. Municipality of Anchorage, 718 P.2d 456, 463-464 (Alaska 1986). But cf. Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177, 1181-1182 (1987) (absent a special duty to preserve evidence, the court will not hold a third party liable for spoliation of evidence detrimental to a personal injury plaintiff). If "concealment of evidence" is substituted for "destruction of evidence," all of those elements were covered by the trial court's concealment of evidence charge in the present case and all of them are amply supported by the evidence.
Immunizing the willful destruction or concealment of evidence would not further the policy of encouraging testimonial candor. As the court explained in Petrik v. Monarch Printing Corp., 150 Ill. App.3d 248, 103 Ill.Dec. 774, 781, 501 N.E.2d 1312, 1319 (App.Ct. 1986), appeal denied, 114 Ill.2d 556, 108 Ill.Dec. 424, 508 N.E.2d 735 (1987):

*127 This state's system of civil litigation is founded in large part on a litigant's ability under the authority of the Supreme Court rules, to investigate and uncover evidence after filing suit. Destruction of evidence known to be relevant to pending litigation violates the spirit of liberal discovery. Intentional destruction of evidence manifests a shocking disregard for orderly judicial procedures and offends traditional notions of fair play.
Consequently, recognizing the defendants' liability for wilfully concealing the Brandt memorandum is not inconsistent with either the letter or the rationale of New Jersey's policy of affording immunity to testimony given during the course of judicial proceedings. Cf. Carden v. Getzoff, 190 Cal. App.3d 907, 235 Cal. Rptr. 698, 701-703 (Cal. App. 1987) (despite recognizing the tort of spoliation of evidence, California has retained its rule of immunity from civil liability for perjury); Henry v. Deen, 310 N.C. 75, 87-91, 310 S.E.2d 326, 334-336 (1984) (civil conspiracy to alter, conceal and destroy medical records to affect a law suit is actionable).
We also reject defendant's argument that the claim for relief which plaintiff asserts in the present action is barred by the entire controversy doctrine. That doctrine "is a preclusionary principle intended to prevent the fractionalization of litigation by requiring all claims between the same parties arising out of or relating to the same transactional circumstances to be joined in a single action." Brown v. Brown, 208 N.J. Super. 372, 377-378, 506 A.2d 29 (App.Div. 1986); see R. 4:30A; Cogdell v. Hospital Center at Orange, 116 N.J. 7, 15-17, 560 A.2d 1169 (1989); Wm. Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 292-293, 375 A.2d 675 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977). In Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986), a husband had assaulted his wife while their divorce action was pending. The issue on appeal was whether her personal injury suit commenced after the conclusion of the divorce action was precluded by the divorce judgment. We held that, as a general rule:
... a party whose constituent claim arises during the pendency of the action risks its loss unless he apprises the court and his adversary of its existence and submits to judicial discretion the determination of whether it should be joined in that action or reserved. [Id. at 382, 506 A.2d 29]
*128 However, contrary to the defendants' assertion, Brown is not controlling here because Ms. Viviano's claim against CBS did not accrue while any claim in the personal injury suit was pending against CBS or its employees.
The earliest date for the accrual of plaintiff's present cause of action is the date on which she discovered the Brandt memorandum, some time during the latter part of May 1982. She filed her personal injury action on July 2, 1979, and amended it to include CBS on September 10, 1981. The last count of plaintiff's complaint which was directed against CBS, the count in the nature of a bill for discovery, was dismissed effective September 17, 1982. Therefore, the present action cannot be barred by the entire controversy doctrine unless plaintiff was obligated to seek leave to assert her concealment-of-evidence claim against CBS between late May 1982 and September 17, 1982.
The claim for which plaintiff recovered damages in the present action did not accrue until after September 17, 1982. The larger part of her compensatory damages consists of $65,600 awarded to her as recompense for interest which she lost because the conduct of CBS delayed the settlement of her claim against Sybron. If she had gone to trial against Sybron and lost, she would not have had that claim for lost interest. Consequently, that claim was not viable until after the Sybron settlement in February 1987. The remaining $7,351.71 of plaintiff's compensatory damage award represents additional expenses which she incurred because of the conduct of CBS. Only the smaller part of those expenses was incurred before September 17, 1982, and the defendants did not request the trial judge to instruct the jury to consider only expenses incurred after that date. Furthermore, even expenses incurred before that date in efforts to extract information from CBS would not have been recoverable as damages if plaintiff had not been able to demonstrate by her 1987 settlement with Sybron that the value of that information for her personal injury claim justified her incurring the expenses for which she sought reimbursement. *129 Plaintiff could not have demonstrated that fact until after the Sybron settlement. Plaintiff was therefore not required to assert her concealment of evidence claim in the prior suit. Cf. Fox v. Cohen, 84 Ill. App.3d 744, 40 Ill.Dec. 477, 406 N.E.2d 178 (App.Ct. 1980) (a suit for hospital's breach of duty to maintain patient records is premature until plaintiff has lost the first malpractice suit); cf. also Petrik v. Monarch Printing Corp., supra, 501 N.E.2d at 1318 (same).
We also disagree with defendant's contention that plaintiff's compensatory damages for lost interest were excessively speculative. Where a wrong has been committed and damages have resulted, mere uncertainty as to the amount of damages will not preclude a recovery even though proof of the amount of damages is inexact. Kozlowski v. Kozlowski, 80 N.J. 378, 388, 403 A.2d 902 (1979). Evidence which affords a basis for estimating damages with some reasonable degree of certainty is sufficient to support an award. Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957); see American Sanitary Sales Co. v. State of N.J., Dep't of Treasury, Div. of Purchase & Property, 178 N.J. Super. 429, 435, 429 A.2d 403 (App.Div.), certif. denied, 87 N.J. 420, 434 A.2d 1094 (1981). On the basis of the testimony presented to it, the jury in this case could reasonably have concluded that had the Brandt memorandum been provided to plaintiff in 1982 or 1983, she would then have obtained a settlement amount at least as large as that which she received in 1987.
The defendants have failed to show that they were prejudiced by the trial judge's decision permitting plaintiff to seek compensation for increased expenses despite her failure to specify those expenses until approximately two weeks before the commencement of the trial. That decision was well within his discretion.
We hold that there was sufficient basis in the present suit for the jury's award of punitive damages. There was substantial evidence of intentional wrongdoing in the sense of *130 an "evil minded act" or an act accompanied by wanton and willful disregard of the rights of another. See Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49, 477 A.2d 1224 (1984). This is an apt case for the award of punitive damages which are intended to punish a tortfeasor and to deter him and others from similar conduct. Fischer v. Johns-Manville Corps., 193 N.J. Super. 113, 120, 472 A.2d 577 (App.Div. 1984), aff'd, 103 N.J. 643, 512 A.2d 466 (1986).
In the present case, the jury awarded punitive damages only against CBS and not against the individual defendants. Defendants contend that plaintiff's proofs did not warrant assessing punitive damages against the corporation. They argue that exemplary damages may be assessed against a corporation only if the wrongful acts were committed by employees so high in authority as to be fairly considered executive in character or by agents authorized to act in the particular manner deemed wrongful or if the corporation ratified the wrongful acts. See Winkler v. Hartford Accident and Indemnity Co., 66 N.J. Super. 22, 29, 168 A.2d 418 (App.Div.), certif. denied, 34 N.J. 581, 170 A.2d 544 (1961); Kelleher v. Detroit Motors, 52 N.J. Super. 247, 252-253, 145 A.2d 335 (App.Div. 1958).
We agree that the trial court did not charge the jury that awarding punitive damages required their finding that the employees responsible for the reprehensible conduct were executives or that the conduct was ratified by the corporation. However, the defendants did not request such a charge or object to the charge as given. We will therefore not reverse on the basis of that omission. See State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969) certif. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); State v. Macon, 57 N.J. 325, 337, 273 A.2d 1 (1971). Furthermore, although the individual defendants were not shown to be high executive officers of CBS itself, they did represent the top management of the record stamping plant at which plaintiff suffered her injury. CBS should not be *131 permitted to avoid punitive damages because CBS Records was then a division of CBS Inc. rather than a separately incorporated subsidiary.
Finally, defendants claim that the award of punitive damages against CBS is fatally inconsistent with the failure to award such damages against the individual defendants. Again, we disagree. The jury could well have concluded that the defendants acted as employees implementing a corporate policy. Furthermore, the verdict can also be understood as implying that the award of punitive damages was warranted by the sum of the malice evidenced by the acts of all of the individual defendants acting together, but not by the acts of any one.
Defendants' remaining grounds of appeal are clearly without merit. R. 2:11-3(e)(1)(E).
The judgment of the trial court is affirmed.
NOTES
[1] The sixth amended complaint was filed July 30, 1982.
[2] At the request of defendants' counsel, his closing argument was omitted from the transcript that was supplied to us.
[3] But see Copeland v. Anderson, 707 P.2d 560, 563-569 (Okla. Ct. App. 1985). The case discusses the history of the majority rule precluding a civil damage suit for perjury, analyzes its rationale, and adopts a contrary rule. To the same effect, see Kintz v. Harriger, 99 Ohio St. 240, 124 N.E. 168 (1919).
[4] Black's Law Dictionary 1257 (5th ed. 1979) defines "spoliation" as follows:

The destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument. [Citation omitted.]
[5] For a review of its genesis and development, see County of Solano v. Delancy, 215 Cal. App.3d 1232, 264 Cal. Rptr. 721, 724-731 (Ct.App. 1989), review denied and ordered not to be officially published (Feb. 1, 1990); see also Annotation, Intentional Spoliation of Evidence Interfering with Prospective Civil Action, as Actionable, 70 A.L.R.4th 984 (1989).