765 A.2d 1103 (2001)
336 N.J. Super. 646
Dolores GILLESKI and Vincent Gilleski, Plaintiffs-Respondents,
v.
COMMUNITY MEDICAL CENTER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 2000.
Decided January 30, 2001.
*1104 Joseph Garvey, argued the cause for appellant (Kelaher, Garvey, Ballou & Van Dyke, attorneys; Peter J. Van Dyke, on the brief).
Cornelius W. Daniel, III, Point Pleasant, argued the cause for respondents (Mr. Daniels and Edward C. Mitchell, Freehold Tp., on the brief).
Before Judges HAVEY, WEFING and LEFELT.
The opinion of the court was delivered by HAVEY, P.J.A.D.
In this personal injury action, judgment was entered on a jury verdict in the amount of $38,000 and $7,500, in favor of plaintiffs Dolores and Vincent Gilleski respectively.[1] Plaintiff sustained injuries while in a hospital x-ray room when a chair collapsed and she fell to the floor. After the accident, defendant Community Medical Center disposed of the chair. Over defendant's objection, the trial court instructed the jury on the theory of negligent spoliation of evidence; that is, defendant negligently disposed of the chair which was critical evidence in a potential law suit against the chair manufacturer. The jury concluded that plaintiffs met each element of the tort and returned a verdict in plaintiffs' favor.
No New Jersey appellate court has recognized the tort of negligent spoliation of evidence. We conclude that negligent spoliation need not be recognized as a separate tort, since such a claim may be resolved by applying traditional negligence principles. Applying those principles, we hold that defendant owed no duty to preserve the chair as evidence. Consequently, the trial court erred in denying defendant's motion to dismiss the case at the close of the proofs. See R. 4:37-2(b). We reverse and remand for entry of judgment dismissing plaintiffs' complaint.
On August 26, 1995, plaintiff accompanied her eighteen-month old niece to defendant Community Hospital to have the niece's finger x-rayed. While in an x-ray room, plaintiff sat on a chair with her niece on her lap while a technician attempted to x-ray the niece's hand. The chair collapsed and plaintiff fell, injuring her back. The left front leg of the chair had broken. Steven Abbott, the x-ray technician, testified that as he was taking the child from plaintiff the chair gave way when plaintiff stood to get up. Two incident reports were marked into evidence, both dated August 26, 1995. The first, signed by plaintiff and, initially, by Steven Abbott,[2] indicated that "chair broke while sitting & holding child." The second report, signed by Abbott and William Goodman, a supervisor in the radiology department, states that "chair leg broke while said person was trying to get up. Was not holding child." Both reports state that plaintiff had suffered an injury to her lower back.
The broken chair was placed in the office of Polly Quinn, the Acting Director of Radiology. Goodman testified that, in accordance with hospital policy, the chair was preserved for inspection, and remained in Quinn's office for possibly three or four weeks before it was discarded. Goodman did not know whether the chair had ever been inspected.
Dolores Merceron, the hospital's Regional Risk Manager, testified that she was notified of the August 26 incident on August 28, 1995, when she received the incident report signed by Abbott and Goodman. She noted that the proper procedure *1105 in such instances is for the staff to "isolate" and "mark" the furnishing or equipment involved in an accident. However, this policy was for the purpose of inspection to determine whether the furnishing should be repaired or discarded, not for the purpose of preserving it as evidence in a potential law suit.
Plaintiff Vincent Gilleski, plaintiff's husband, called Merceron on two occasions within days of the accident. Gilleski complained that the hospital had failed to provide adequate medical care to plaintiff, including taking x-rays of her back. However, no mention was ever made during these calls of a potential law suit against the hospital or the manufacturer of the chair as a result of plaintiff's fall, nor was any request made that the hospital preserve the chair as evidence. Defendant was not given notice of a potential law suit until it received a letter from plaintiffs' attorney dated October 21, 1996, fourteen months after the accident. The letter made no mention of preservation of the chair or that plaintiffs intended to institute suit against the manufacturer of the chair. When she received the letter, Merceron checked and determined that the hospital had already disposed of the chair.
Plaintiffs' case was presented to the jury based on two theories: (1) defendant's negligence in permitting plaintiff to utilize a defective chair; and (2) negligent spoliation of evidence; that is, defendant negligently disposed of the chair which was critical evidence in a potential law suit against the chair manufacturer.
The trial court denied defendant's motion to dismiss the negligent spoliation charge, stating that according to New Jersey case law, a cause of action for such a tort is recognized. The court observed that an action for negligent spoliation consists of six elements: (1) the existence of a potential law suit; (2) a legal or contractual duty or an undertaking to preserve the evidence that is relevant to the potential law suit; (3) the negligent destruction or loss of that evidence; (4) significant impairment in the ability to prove the cause of action; (5) causal relationship between the evidence negligently destroyed or lost and the inability to prove the law suit; and (6) damages. The court decided two of the elements as a matter of law (elements (4) and (5)), holding that plaintiffs had satisfied these elements. The jury was instructed to decide:
(1) Did there exist a potential law suit?
(2) Was there a legal or contractual duty or undertaking to preserve evidence for a potential law suit?
(3) Were the actions of defendant negligent in the destruction or loss of the chair?
(4) How much money, if any, would you compensate plaintiff for her injuries?
(5) How much money, if any, would you compensate Mr. Gilleski for his per quod claim?
The jury determined that defendant was not negligent concerning plaintiff's use of the chair, but found for plaintiffs on the negligent spoliation claim.
New Jersey has recognized the tort of fraudulent concealment of evidence. See Viviano v. CBS, Inc., 251 N.J.Super. 113, 126, 597 A.2d 543 (App.Div.1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992). The plaintiff in Viviano, while a CBS employee, was injured when a machine she was operating malfunctioned. Id. at 117, 597 A.2d 543. Plaintiff instituted an action against CBS claiming that its personnel had fraudulently concealed an internal memo that was key to plaintiff's action against the manufacturer of the machine. Id. at 119-20, 597 A.2d 543. Citing out-of-state authority, we analogized plaintiff's case to a cause of action for "spoliation of evidence," which, we observed, has the following elements:
(1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by *1106 the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts.
[Id. at 125-26, 597 A.2d 543 (emphasis added).]
We held that:
To prove that the defendants were liable to plaintiff for fraudulent concealment, she had to show that they were legally obligated to disclose the Brandt memorandum to her, that it was material to her personal injury case, that she could not readily have learned of it without their disclosing it, that they intentionally failed to disclose it to her, and that she was harmed by relying on the nondisclosure. Cf. State of N.J., Dep't of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150 (1983).
[Id. at 123, 597 A.2d 543.]
As noted, Viviano involved "willful concealment" of evidence. Id. at 126, 597 A.2d 543. In this case, the parties agree that no willful or intentional conduct has been demonstrated on the hospital's part which caused the loss of the chair. Rather, plaintiffs' case is premised on a theory of "negligent" spoliation of evidence. The trial court, citing the "possibly, negligent destruction of evidence" language in Viviano and a Law Division case, Callahan v. Stanley Works, 306 N.J.Super. 488, 703 A.2d 1014 (Law Div.1997), determined that the tort of negligent spoliation of evidence has been recognized in New Jersey.
New Jersey appellate courts have not recognized the tort of negligent spoliation of evidence. See Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co., 305 N.J.Super. 550, 556, 702 A.2d 1336 (App.Div.1997); Nerney v. Garden State Hosp., 229 N.J.Super. 37, 40, 550 A.2d 1003 (App.Div.1988); and see Kolanovic v. Gida, 77 F.Supp.2d 595, 605 (D.N.J. 1999) (declining to recognize the tort of negligent spoliation because New Jersey's Supreme Court has not recognized it). Further, the tort has not been readily recognized by courts in other jurisdictions. See Allis-Chalmers Corp., supra, 305 N.J.Super. at 557, 702 A.2d 1336; Boyd v. Travelers Ins. Co., 166 Ill.2d 188, 209 Ill. Dec. 727, 652 N.E.2d 267, 270 (1995).
Nevertheless, there is out-of-state authority for the proposition that claims of negligent destruction of evidence against a third party may be resolved by applying traditional negligence principles. See Smith v. Atkinson, 771 So.2d 429, 432 (Ala.2000); Coleman v. Eddy Potash, Inc., 120 N.M. 645, 905 P.2d 185, 190 (1995); Boyd, supra, 209 Ill.Dec. 727, 652 N.E.2d at 270. We agree with this approach and therefore decline to recognize negligent destruction of potential evidence as a separate tort.
To state a cause of action for negligence, a plaintiff must plead: "(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach." Endre v. Arnold, 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997). The dispositive issue in this case is whether defendant owed plaintiffs a duty to preserve the chair in question as evidence in a potential law suit by plaintiffs against the chair manufacturer. As stated, the trial court presented to the jury the issue of whether a duty to preserve the chair was owed by defendant. However, the determination of whether a duty exists is a matter of law properly decided by the court. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996). Indeed, we have expressly held that the existence of a duty to preserve evidence is a question of law to be determined by the trial court. Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J.Super. 358, 365, 707 A.2d 180 (App. Div.1998); and see Hirsch v. General Motors Corp., 266 N.J.Super. 222, 249, 628 A.2d 1108 (Law Div.1993).
As to the question of duty to preserve evidence, the Supreme Court of Illinois in Boyd, supra, 209 Ill.Dec. 727, 652 N.E.2d at 270-71, observed:

*1107 The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute (see Rodgers v. St. Mary's Hospital (1992), 149 Ill.2d 302, 173 Ill. Dec. 642, 597 N.E.2d 616) or another special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. (See Nelson v. Union Wire Rope Corp. (1964), 31 Ill.2d 69, 74, 199 N.E.2d 769). In any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.
See also Callahan, supra, 306 N.J.Super. at 497, 703 A.2d 1014 (holding that "[a] jury could find that Home Depot owed a duty of care to [plaintiff] to preserve the pallet since a reasonable person in Home Depot's position `should have foreseen that the evidence was material to a potential civil action'") (quoting Boyd, supra, 209 Ill.Dec. 727, 652 N.E.2d at 271). Essentially, Boyd imposes a duty of care if the third party, in possession of the evidence, has constructive notice that the evidence is material to a potential law suit. In our view, the Boyd holding reaches too far.
"The question of whether a duty to exercise reasonable care to avoid the risk of harm to another exists is one of fairness and policy that implicates many factors." Carvalho, supra, 143 N.J. at 572, 675 A.2d 209. The foreseeability of harm is one important factor. Ibid. However, "[o]nce the foreseeability of an injured party is established ... considerations of fairness and policy warrant the imposition of a duty." Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194-95, 638 A.2d 1288 (1994). The assessment of fairness and policy "involves identifying, weighing, and balancing several factors the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993).
Most negligent spoliation causes of action are dismissed because the defendant owed no duty to plaintiff to preserve the evidence. See Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177, 1179 (1987); Margaret O'Mara Frossard and Neal S. Greenberg, Spoliation of Evidence in Illinois: The Law After Boyd v. Traveler's Insurance Co., 28 Loy. U. Chi. L.J. 685, 709 (1997). In cases where it was found that no duty exists, courts often focus on the "unwarranted intrusion on the property rights of a person who lawfully disposes of his [or her] own property." Koplin, supra, 734 P.2d at 1183. See also Coleman, supra, 905 P.2d at 190 (holding that, in deciding whether a duty exists, a court must consider the "general expectation that an owner has a free hand in the manner in which he or she disposes of his or her property").
Consequently, recent out-of-state decisions have carefully circumscribed the scope of a duty in a claim that a third party has negligently disposed of evidence. First, when the third party "has knowledge of a pending or potential lawsuit and accepts responsibility for evidence that would be used in that lawsuit, it should be held liable for damage resulting from the loss or destruction of that evidence." Smith, supra, 771 So.2d at 433. Second, a duty may be created by "the spoliator voluntarily undertaking to preserve the evidence and a plaintiff reasonably and detrimentally relying thereon; by an agreement to preserve between the spoliator and the plaintiff; or by a specific request to the spoliator to preserve a particular item." Johnson v. United Serv. Auto. Ass'n, 67 Cal.App.4th 626, 635, 79 Cal.Rptr.2d 234 (1998) (citations omitted). A third party's constructive notice of a pending or potential action is not sufficient to force upon the third party the duty to preserve evidence. Ibid. We adopt these standards as representing a fair balance between the *1108 competing interests of an injured plaintiff's right to pursue a potential law suit, and a third party's entitlement to dispose of its own property in a reasonable fashion.
Applying the above-stated principles to the facts of this case, we conclude that defendant owed no duty to plaintiffs. We agree with the California and Alabama courts that mere constructive notice of a potential third-party action based solely on the happening of an injury is insufficient. "Limiting the usual duty in third party negligent spoliation to an agreement to preserve, or a voluntary undertaking with reasonable and detrimental reliance, or a specific request, ensures that such a spoliator has acted wrongfully in a specifically identified way." Id. at 637, 79 Cal.Rptr.2d 234. Accord Smith, supra, 771 So. 2d at 432.
It is not asserted by plaintiffs that defendant's duty to preserve the chair arose by way of a contract, court rule, or statute. See Boyd, supra, 209 Ill.Dec. 727, 652 N.E.2d at 270-71. In this regard, we note that any person desiring to preserve evidence prior to institution of an action may seek such relief by verified petition pursuant to R. 4:11-1(a). No such application was made here.
The evidence is clear that defendant did not accept responsibility for the evidence with knowledge of a pending or potential law suit. Smith, supra, 771 So.2d at 432. Hospital personnel received calls from plaintiffs within days after the accident complaining that the hospital had not provided adequate medical care to plaintiff as a result of her fall. Neither plaintiff nor her husband requested that the chair be preserved or stated that they intended to pursue a law suit against the hospital or third party. Defendant was not given notice of a potential law suit until October 21, 1996, fourteen months after the accident when it received a letter from plaintiff's attorney. Notably, no mention was made in that letter of a potential claim against the manufacturer of the chair, nor did the attorney request that defendant preserve the chair for the purpose of a third-party action.
The facts here are readily distinguishable from the those presented in Callahan v. Stanley Works, 306 N.J.Super. 488, 703 A.2d 1014 (Law Div.1997), on which the trial court relied. In Callahan, plaintiff, a Home Depot employee, was injured while moving a pallet of storm doors with a forklift truck. The doors tipped off the forklift and struck plaintiff. 306 N.J.Super. at 491-92, 703 A.2d 1014. Immediately after the accident, Home Depot had taken steps to preserve the pallet. Plaintiff sued Stanley Works alleging negligent packaging of the doors and subsequently added Home Depot as a defendant, claiming that Home Depot lost or destroyed the pallet "which may have been the instrument of the injury." Id. at 492, 703 A.2d 1014. The Law Division concluded that a jury "could find that Home Depot `should have foreseen that the evidence was material to a potential civil action.'" Id. at 497, 703 A.2d 1014 (quoting Boyd, supra, 209 Ill.Dec. 727, 652 N.E.2d at 271). However, Home Depot had imposed a workers' compensation lien on any damages plaintiff might recover in a third-party action against Stanley Works pursuant to N.J.S.A. 34:15-40. Clearly, by imposing such a lien, Home Depot was on actual notice that a third-party action had been or would be instituted. Here, there was no actual notice of a suit against the chair manufacturer or any evidence demonstrating that defendant accepted responsibility to preserve the chair.
Further, it cannot be said that there was a voluntary undertaking on the part of the hospital upon which plaintiffs reasonably relied to their detriment. Defendant had a hospital policy of preserving damaged furnishings or equipment for a limited period of time in order to permit Plant Operations to inspect it. The furnishing would ordinarily be disposed of if it could not be repaired and placed back into service. Dolores Merceron, the hospital's Regional Risk Manager, testified that the policy of isolating equipment was for the purpose of *1109 inspection to determine whether repair was possible, not to preserve it as evidence in a potential third-party law suit.
In deciding whether a duty to preserve evidence should be imposed, we also must consider the "moral blame attached to the defendant's conduct" and the "extent of the burden to the defendant and consequences to the community" of imposing such a duty. Johnson, supra, 67 Cal. App.4th at 636, 79 Cal.Rptr.2d 234. It cannot be fairly argued that the "moral blame" is heavy here when the hospital was not requested to preserve the evidence and was not given notice of a potential law suit in which the evidence may be material. In addition, hospital personnel testified that the hospital has several hundred chairs in use within its facility. Clearly, it was duty-bound to repair or replace the chairs and other furnishings promptly in order to serve its patients and personnel and to carry out its medical care-giving functions. Also, Merceron testified that there are approximately 700 claims made quarterly concerning defects or misuse of hospital furniture and equipment. These incidents may or may not involve claims, the claims may or may not be foreseeable, and may or may not involve potential law suits against third-party manufacturers. To require the hospital to preserve every piece of furnishing and equipment involved in these claims, without an agreement to preserve, a voluntary undertaking to do so, or a specific request, imposes an undue burden upon it and results in an unwarranted intrusion on its property right to repair or dispose its furnishings and equipment in accordance with hospital policy and practice. See Koplin, supra, 734 P.2d at 1183.
Reversed and remanded for the entry of a judgment dismissing plaintiff's complaint.
NOTES
[1] Plaintiff Vincent Gilleski asserted a per quod claim. We refer to Dolores Gilleski as "plaintiff" in this opinion.
[2] Abbott first signed the incident report filled out by plaintiff, but later redacted his signature from this document after he realized it was an employee injury report, rather than the proper accident report.