LITHUANIAN COMMERCE
CORPORATION, LTD.,
Plaintiff,

v.

SARA LEE HOSIERY, Sara Lee Ho-
siery International, Sara Lee Interna-
tional and Sara Lee Corporation, De-
fendants,

v.

Algis Vasys and Laima Zajanck-
auskiene, Additional Coun-
terclaim Defendants.

CIVIL ACTION NO. 96–1949.

United States District Court,
D. New Jersey.

June 12, 2002.

Gregory D. Saputelli, James R. Thompson, Amanda W. Figland, Obermayer, Rebmann, Maxwell & Hippel, LLP, Cherry Hill, NJ, for Plaintiff, Lithuanian Commerce Corporation, Ltd.

Carl W. Hittinger, Stevens & Lee, P.C., Philadelphia, PA, for Defendants, Sara Lee Hosiery and Sara Lee Corporation.

## OPINION

ORLOFSKY, District Judge.

Plaintiff's travails throughout the six-year odyssey of this lawsuit have been well-documented. Plaintiff has repeatedly ignored this Court's deadlines, has filed numerous eleventh-hour motions, has identified and then withdrawn a succession of expert witnesses, and, in general, has exhibited a cavalier disregard for the deadlines and orders entered by this Court. With the instant motion *in limine*, filed on the eve of the retrial of Plaintiff's remaining claims, to exclude Defendant's expert witness, Plaintiff now seeks to gain an unfair advantage from the Court of Appeals' remand of this case on wholly different issues. Incredibly, this pending motion *in limine* was filed *four years* after this Court's deadline for the filing of *in limine* motions concerning expert witnesses had passed, and after several opportunities to object to this witness's qualifications in a timely manner had been ignored. Undeterred by this Court's previous warnings and sanctions, Plaintiff again attempts to disregard the deadlines established by Court Order in order to correct its prior defalcations. For the reasons set forth below, I conclude that Plaintiff's latest effort to cir-

cumvent this Court's deadlines must fail. Accordingly, I shall deny its motion *in limine* as untimely.

## I. BACKGROUND

The facts giving rise to this lawsuit have been set forth in numerous published and unpublished opinions of this Court[1] and, therefore, will not be recounted in their entirety here. At its core, this lawsuit concerns an agreement ("Distribution Agreement"), between the Defendant, Sara Lee Hosiery ("Sara Lee") and the Plaintiff, Lithuanian Commerce Corporation, Ltd. ("LCC"), under which LCC would distribute L'Eggs pantyhose, manufactured by Sara Lee, in Lithuania.

During the term of the Distribution Agreement, Sara Lee made a charitable donation of L'Eggs pantyhose to countries neighboring Lithuania. This influx of L'Eggs pantyhose allegedly depressed LCC's sales and LCC threatened legal action against Sara Lee. In response, Sara Lee offered to provide LCC with a substantial quantity of L'Eggs pantyhose manufactured in Mexico at no cost, in exchange for a release of all claims LCC might have against Sara Lee. LCC accepted Sara Lee's offer and entered into a letter agreement memorializing these terms, ("Settlement Agreement"). LCC alleges that the Mexican pantyhose which Sara Lee provided pursuant to the Settlement Agreement were defective, and instituted suit against Sara Lee in this Court on April 29, 1996, alleging numerous causes of action, including contract claims, tort claims, and various New Jersey statutory claims.

Prior to the first day of trial, I excluded LCC's damages expert, Charles J. Cummiskey, because his report lacked the reliability required by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and the Federal Rules of Evidence. A jury trial commenced on September 8, 1998. During the trial, LCC moved to amend the Joint Final Pretrial Order to expand the scope of testimony to be given by Laima Zajanckauskiene, in order to include projections of damages due to lost profits. I denied this motion in a Bench Opinion on September 23, 1998, because: (1) LCC had had ample opportunities to amend the Joint Final Pretrial Order, but had failed to do so; and (2) LCC could not demonstrate that it would suffer "manifest injustice" if the amendment were not allowed. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 96–1949, bench op. at 7 (D.N.J. Oct. 5, 1998).

At the end of Plaintiff's case-in-chief, after eighteen days of trial, Sara Lee moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a). I granted that motion, finding that: (1) LCC had not presented sufficient evidence regarding lost profits to permit a jury to award compensatory damages resulting from any of its causes of action, *i.e.*, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, breach of contract, common law fraud, tortious interference with prospective business relations, or a

---

1. *See e.g., Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 97–1949 (D.N.J. Feb. 13, 2002); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 96–1949 (D.N.J. Aug. 2, 1999); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 47 F.Supp.2d 523 (D.N.J.1999); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 96–1949 (D.N.J. Oct. 5, 1998); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450 (D.N.J.1998); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 23 F.Supp.2d 509 (D.N.J. 1998); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205 (D.N.J.1997); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 245 (D.N.J.1997).

breach of the duty of good faith and fair dealing; (2) LCC had failed to prove that it was a franchisee of Sara Lee; and (3) the New Jersey Punitive Damages Act, N.J.S.A. § 2A:15–5.13 ("NJPDA"), precluded a jury from awarding punitive damages absent an award of compensatory damages. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 23 F.Supp.2d 509, 512 (D.N.J.1998).

LCC filed a notice of appeal with the United States Court of Appeals for the Third Circuit on May 14, 1999. In an unreported decision, authored by Circuit Judge Garth, the Third Circuit affirmed my exclusion of Mr. Cummiskey's testimony regarding lost profits, affirmed my ruling precluding Ms. Zajanckauskiene from testifying as to lost profits, and affirmed my denial of LCC's motion to amend the Joint Final Pretrial Order. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Nos. 99–5347 & 99–5742, slip op., at 16 (3d Cir. Sept. 11, 2000). Because the Court of Appeals found that "there was competent evidence at trial which established damages arising from the alleged breach of the Settlement Agreement," the Third Circuit vacated the judgment in favor of Sara Lee and remanded this case for retrial in accordance with its opinion. The Parties disagreed as to the scope of issues on remand, therefore, I ordered briefing on that issue, and, in an unpublished Opinion and Order, dated February 13, 2002, I held that on retrial, LCC would be allowed to present evidence concerning the alleged breach of warranty under the U.C.C.; the alleged breach of implied warranties of merchantability and fitness for an intended purpose under the U.C.C.; the alleged breach of contract; the alleged common law fraud; the alleged tortious interference with contract and prospective business relations; and, the alleged violations of the covenant of good faith and fair dealing. *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 97–1949, at 15 (D.N.J. Feb. 13, 2002).

Three weeks before the retrial of this case was scheduled to begin on June 24, 2002, LCC moved to exclude the reports and testimony of Sara Lee's expert, Dr. Tushar Ghosh. Sara Lee responded to LCC's motion *in limine* by letter dated June 3, 2002, asking this Court to "summarily deny LCC's motion as untimely and/or waived." I gave LCC an opportunity to file a letter brief explaining why its motion should not be so dismissed. Unfortunately, LCC's current motion necessitates a brief recitation of the acrimonious volley of motions *in limine* that has characterized the pretrial phase of this matter.

During the course of pretrial discovery in this case, LCC identified seven expert witnesses. It identified Dr. Byiung Jun Park as its first product expert. LCC subsequently withdrew Dr. Park and substituted Julius Hyman as its product expert. On February 28, 1997, at a hearing before Magistrate Judge Rosen, counsel for LCC represented that LCC had provided its *final* expert report, however, on July 3, 1997, LCC filed a motion *in limine* for leave to substitute its *third* expert witness, Dr. Bernard Miller, for Julius Hyman. The substitution was prompted by LCC's discovery that Mr. Hyman was unqualified to serve as an expert witness. Incredibly, LCC discovered this fact *at Mr. Hyman's deposition*. Judge Rosen granted LCC's motion to substitute Dr. Miller on July 24, 1997, conditioned on LCC's payment of the expenses incurred by Sara Lee as a result of LCC's erroneous identification of Julius Hyman as an expert and its last-minute substitution of Dr. Miller. Order, *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, Civil Action No. 97–1949 (D.N.J. July 24, 1997)(Rosen, J.). Also on July 3, 1997, Sara Lee filed a motion *in limine* to exclude the reports

and testimony of LCC's experts, pursuant to Fed.R.Evid. 702 and *Daubert.*

The Joint Final Pretrial Order was filed on September 5, 1997. It provided, *inter alia,* that: (1) "[a]ny prior Scheduling Order of the Court concerning experts is applicable to this action and the directives of the Scheduling Order shall govern expert testimony in the case;" (2) "no opposing counsel shall be permitted to question the qualifications of the expert unless the basis of the objection is set forth in this Final Pretrial Order." Joint Final Pretrial Order at 119. On September 5, 1997, Judge Rosen also extended the deadline for *Daubert* motions, due to the rancor surrounding the qualifications of each side's expert witnesses, but stressed that "[a]ll motions *in limine* shall be filed no later than October 1, 1997, or they will not be heard." Letter from Hon. Joel B. Rosen to Gregory D. Saputelli, Esq. and Carl W. Hittinger, Esq., dated Sept. 5, 1997.

On October 1, 1997, LCC filed a motion to limit the scope of the reports of Sara Lee's expert, Dr. Tushar Ghosh, insofar as they relied upon reports filed by LCC's withdrawn expert witness, Julius Hyman. I note that LCC's current motion *in limine* to bar Dr. Ghosh's testimony "recycles" many of the same arguments that LCC made in its motion of October 1, 1997. Although it could have done so, LCC did *not* challenge the admissibility of Dr. Ghosh's testimony, pursuant to Fed. R.Evid. 702 and *Daubert* in its October 1, 1997 motion. In an Opinion and Order, dated December 4, 1997, Judge Rosen, *inter alia,* dismissed as moot LCC's motion to limit the scope of Dr. Ghosh's reports. That decision was never appealed to this Court or the Court of Appeals.

LCC now attempts to leverage the Third Circuit's remand decision which concerned wholly unrelated matters in order to mount a *Daubert* challenge against Dr. Ghosh, which it could have, but failed to make prior to the first trial. This motion reflects LCC's general tendency to attempt to rectify situations of its own making after the expiration of a Court-ordered deadline. Although I granted Sara Lee's Rule 50 motion prior to the presentation of its case to the jury, LCC was clearly on notice that Sara Lee intended to use Dr. Ghosh as an expert witness and has had numerous opportunities to object to his qualifications. Dr. Ghosh is identified as an expert witness in the Joint Final Pretrial Order. Dr. Ghosh submitted two expert reports, was extensively deposed on those reports, and, testified at the *Daubert* hearing conducted for LCC's expert, Dr. Miller. Furthermore, LCC never moved to amend the Joint Final Pretrial Order, never moved to amend Judge Rosen's Scheduling Order of September 5, 1997, and never sought leave to file the instant, untimely motion.

## II. DISCUSSION

LCC argues that the Court must consider its current motion *in limine,* despite its untimeliness, because: (1) the Court has an ongoing obligation to perform the "gatekeeping" function described in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); (2) Federal Rules of Evidence 702 and 703 were amended and *Kumho* was decided subsequent to the first trial in this matter; and, (3) its expert, Dr. Miller, who testified at the first trial, has since passed away and thus, will be unable to rebut Dr. Ghosh's testimony.

### A. "Gatekeeping" Function of the Court

LCC correctly recites two key principles of *Daubert* and *Kumho,* namely, that

the Court has an ongoing responsibility to act as a "gatekeeper" with regard to scientific opinion evidence throughout a trial, and that this Court may strike evidence at any time, even in the absence of an objection by the opposing party. *See Kumho,* 526 U.S. at 152, 119 S.Ct. 1167; *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. These principles of law, however, do not mean, as LCC contends, that a party may not waive its right to make a *Daubert* challenge. *See e.g., Questar Pipeline Co. v. Grynberg,* 201 F.3d 1277, 1289–90 (10th Cir.2000)("A party may waive the right to object to evidence on *Kumho/Daubert* grounds by failing to make its objection in a timely manner"); *Marbled Murrelet v. Babbitt,* 83 F.3d 1060 (9th Cir.1996)(failure to raise *Daubert* challenge at trial constituted waiver of right to raise admissibility issues on appeal); *De Puy, Inc. v. Biomedical Engineering Trust,* No. Civ. A. 97–3450, 2001 WL 1683021, at *14–15 (D.N.J.2001)(plaintiff knowingly waived any *Daubert* objections prior to trial); *Webster v. Fulton County,* 85 F.Supp.2d 1375, 1377 (N.D.Ga.2000)(motion for *Daubert* hearing dismissed as untimely).

LCC failed to make a motion to exclude Dr. Ghosh's reports and testimony, or to request a *Daubert* hearing on Dr. Ghosh's testimony at any time during or prior to the first trial of this case. While a trial on remand is not in the same procedural posture as an appeal, the premise underlying the waiver of a *Daubert* challenge is the same: a party should not be permitted to circumvent the Federal Rules of Civil Procedure and Orders of the Court, and put its adversary at a significant disadvantage on the eve of a retrial, merely because it succeeded on its appeal of wholly unrelated issues. *Cf. Marbled Murrelet,* 83 F.3d at 1067 (noting that allowing appellant to challenge on appeal the reliability of adversary's scientific expert report which it did not challenge at trial would give it an unfair advantage). Here, LCC seeks to disqualify an expert, whose identity and proposed testimony were known to LCC well in advance of the first trial. To disqualify this expert now, without a *Daubert* hearing, as LCC urges, would unfairly disadvantage Sara Lee.

This is not to say, as LCC's argument would suggest, that the Court is abandoning its "gatekeeper" function. As LCC itself admits, *Daubert* provides that "in the event [this Court] concludes that the scintilla of evidence supporting a position is insufficient to allow a reasonable juror to conclude that the position is more likely than not is true, the Court remains free to direct a judgment, . . ." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786.

**B. Changes in the Law**

LCC also contends that its untimely motion *in limine* must be considered by the Court because "[t]he Rules of Evidence and case law have substantially changed since October 1998, when Defendant's Rule 50(a) motion was granted during the prior trial." While it is true that Rules 702 and 703 were amended in 2000, and that *Kumho* was decided in 1999, LCC's argument is unavailing because both *Kumho* and the amendments to the Federal Rules of Evidence merely clarified the law that was applied to the qualification of experts during the first trial.

First, *Kumho* clarified that the *Daubert* analysis was to be applied to all expert testimony, not just testimony based in science. *Kumho's* holding, therefore, does not impact this matter because Dr. Ghosh is a scientific expert, and thus, any challenges to his reports or testimony were and are governed by *Daubert.*

Likewise, the amendment to Rule 702 of the Federal Rules of Evidence was made *in response* to *Daubert,* thus, any changes

merely codified what *Daubert* had already held, *see* Fed.R.Evid. 702 advisory committee notes, and which this Court has already applied. *Lithuanian Commerce Corp.*, 179 F.R.D. at 457, 459, 460, 462, 464, 465; *Lithuanian Commerce Corp.*, 177 F.R.D. at 254, 257–59, 259–60, 261–62, 263–64, 266–67, 269–70, 271, 274–75.

The amendment to Rule 703 similarly has no impact on the instant motion. The amendment:

> governs only the disclosure to the jury of information that is reasonably relied on by an expert, when that information is not admissible for substantive purposes. It is not intended to affect the admissibility of an expert's testimony. Nor does the amendment prevent an expert from relying on information that is inadmissible for substantive purposes.

Fed.R.Evid. 703 advisory committee's notes. That standard was utilized by this Court in its previous assessment of the Parties' expert witness testimony. 179 F.R.D. at 457, 459 ("The Third Circuit has similarly interpreted Rule 703 to require that data underlying an expert's opinion be reliable").

█ LCC contends that Dr. Ghosh's reports are unreliable under *Daubert* because they rely upon hearsay data and reports from other LCC experts, which were subsequently excluded by this Court. This argument is unpersuasive for several reasons. First, LCC's own expert, Dr. Miller, whose prior testimony will be read to the jury at the retrial, relied upon many of those same reports to form his opinion. Second, Sara Lee contends that while Dr. Ghosh relied upon those reports at the *Daubert* hearing challenging LCC's experts, he "does not *now* intend to rely upon the expert reports and test data of any other LCC expert for purposes of trial ... except Dr. Miller and LCC's prior withdrawn expert, Julius Hyman, upon whom Dr. Miller also relies, ..." Def.'s Letter Br. of June 7, 2002, at 4. Finally, I concur with the conclusion Judge Rosen drew when denying Sara Lee's motion to exclude LCC's experts which was based upon this very same argument: "[whether] Dr. Miller's test results do not support his conclusions that the entire lot of Mexican pantyhose are defective is more properly addressed through the testimony of Dr. Ghosh and through the cross-examination of Dr. Miller at trial, rather than [through] the exclusion of Dr. Miller's report." *Lithuanian Commerce Corp.*, 177 F.R.D. at 275 (citing *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")).

## C. Changes in Factual Circumstances

In a last ditch effort to justify its untimely motion *in limine*, LCC makes the following plea:

> As the Court knows, plaintiff's only product/textile expert witness passed away suddenly last November, three years after the conclusion of the prior trial in this matter. Had the Court not granted Defendant's Rule 50(a) motion, and, thereafter, had the testimony of Defendant's expert, Dr. Ghosh, survived Rule 103, 104, 702 and 703 objections, it was Plaintiff's intention to present the testimony of Dr. Miller as a rebuttal witness. As a result of Dr. Miller's passing, this is no longer possible, and Plaintiff will be severely prejudiced by its lack of an expert witness who has complied with FRCP 26 and who is alive and capable of rebutting Dr. Ghosh's testimony.

Pl.'s Letter Br. of June 6, 2002, at 3. While Dr. Miller's untimely death is indeed unfortunate for all affected by it, it cannot provide the convenient escape hatch through which LCC seeks to avoid its previous failure to challenge Dr. Ghosh's testimony.

 First, as *Daubert* and Judge Rosen recognized, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786; *Lithuanian Commerce Corp.*, 177 F.R.D. at 275. Second, the Court is not persuaded to allow LCC to play "fast and loose" with the Federal Rules of Civil Procedure and the Orders of this Court, especially when it has previously been found to have engaged in "expert shopping." *Lithuanian Commerce Corp.*, 177 F.R.D. at 277 ("LCC further argues that allowing Dr. Ghosh to rely on such information ... may lead the jury to believe that the plaintiff has been shopping for experts. Indeed, expert shopping is precisely what plaintiff's counsel has done.")(internal citation omitted). Third, Rule 702 of the Federal Rules of Evidence envisages the possibility that different experts applying the same methodology to the same facts can arrive at different conclusions. Such a result does not require the conclusion that the testimony of one of the experts is unreliable. Fed.R.Evid. 702 advisory committee's notes. Finally, LCC was aware of Dr. Miller's death in November, 2001. If it believed that it would be irreparably prejudiced by the impossibility of rebutting Dr. Ghosh's testimony with live expert witness testimony, it could have applied for leave of Court to substitute yet another product expert,[2] rather than wait until the eleventh hour to challenge its adversary's expert about whom it has known for over four years.

### III. CONCLUSION

For the reasons set forth above, I conclude that LCC's motion *in limine* to bar the reports and testimony of Sara Lee's expert witness, Dr. Tushar Ghosh, shall be denied as untimely. The Court shall enter an appropriate form of Order.

---

2. Because I mention this possibility as a hypothetical scenario, I intimate no opinion as to whether such a motion, made on the basis of exigent circumstances, would have been granted.